# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2020-NMCA-049**

**Filing Date: August 18, 2020**

**No. A-1-CA-37411**

**STATE OF NEW MEXICO,**

>   Plaintiff-Appellee,

v.

**ANTHONY BACA,**

>   Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Drew D. Tatum, District Judge**

Released for Publication November 24, 2020.

Hector H. Balderas, Attorney General
Benjamin L. Lammons, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Caitlin C.M. Smith, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**HANISEE, Chief Judge.**

**{1}** This formal opinion replaces the memorandum opinion filed in this matter on July 30, 2020.

**{2}** Anthony Baca (Defendant) appeals his convictions for (1) assault with intent to commit a violent felony upon a peace officer, contrary to NMSA 1978, Section 30-22-23 (1971); and (2) aggravated battery upon a peace officer with a deadly weapon, contrary to NMSA 1978, Section 30-22-25(C) (1971). On appeal, Defendant challenges the

sufficiency of the evidence supporting his conviction for assault, and alternatively argues that his convictions for assault and aggravated battery constitute a double jeopardy violation and that we should therefore vacate his aggravated battery conviction. We affirm in part and reverse in part.

## BACKGROUND

{3}     On August 29, 2016, Defendant was stopped by Officer Christopher Caron of the Clovis Police Department for riding his bicycle on the wrong side of the road. Officer Caron asked Defendant for his identification, but Defendant had none. Officer Caron then asked Defendant his name and date of birth and relayed both to dispatch, from which Officer Caron learned there was an outstanding warrant for Defendant. But when Officer Caron told Defendant that he was going to be arrested on the warrant and tried to handcuff Defendant, Defendant decided to flee rather than be arrested.

{4}     Defendant first attempted to utilize his bicycle to get away, but Officer Caron tackled him. Defendant then ran away, and was chased by Officer Caron into a poorly lit driveway. As Defendant tried again to thwart his capture, Officer Caron fired his taser at Defendant, but missed. Defendant then shot Officer Caron and subsequently "took off running" away from the scene. While Defendant's weapon cannot clearly be seen in Officer Caron's lapel camera footage, the footage depicts a bright flash and simultaneously records audio of a corresponding loud bang. From his perspective, Officer Caron "observed [the] bright flash, . . . heard [the] loud bang, and . . . then felt a very intense burning sensation [on] his left thigh[,]" where the bullet fired by Defendant struck Officer Caron. Although Officer Caron did not directly see Defendant shoot him, he knew immediately that he was shot and updated dispatch to this fact, simultaneously taking cover behind a barbeque grill until backup arrived on the scene.

{5}     In the end, officers were unable to apprehend Defendant that night, but he turned himself in two days later. In the aftermath of all that happened, Defendant was charged with assault with intent to commit a violent felony upon a peace officer, aggravated battery upon a peace officer, and resisting, evading, or obstructing an officer. After a two-day trial, a jury found Defendant guilty of everything with which he was charged. Defendant appeals.

## DISCUSSION

### I.     The Evidence Supporting Defendant's Conviction for Assault Was Insufficient

{6}     Defendant argues there was insufficient evidence to support his conviction of assault with intent to commit a violent felony upon a peace officer. Specifically, Defendant contends that, under the State's theory of assault based on reasonable apprehension, there was no evidence presented that Defendant engaged in any conduct before or after the shooting that could have placed Officer Caron in reasonable fear of an immediate battery by Defendant. The State argues that Defendant's shooting

of Officer Caron constituted not only the battery but what the State contends to be a subsequent assault as well, because the shot fired at Officer Caron caused him to reasonably fear that he would be shot again by Defendant, and that sufficient evidence supported both convictions. Specifically, the State asserts that "[u]nlawful conduct alone suffices as the actus reus for an assault charge" and that because Defendant's shooting of Officer Caron was indisputably unlawful conduct, such is, on its own, sufficient evidence to support Defendant's assault conviction.

{7}     The test for sufficiency of the evidence is "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Carson*, 2020-NMCA-015, ¶ 44, 460 P.3d 54 (internal quotation marks and citation omitted). "Substantial evidence is that which a reasonable mind accepts as adequate to support a conclusion." *State v. Huerta-Castro*, 2017-NMCA-026, ¶ 24, 390 P.3d 185. We evaluate the sufficiency of the evidence by "viewing the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all permissible inferences in favor of upholding the conviction, and disregarding all evidence and inferences to the contrary." *State v. Trujillo*, 2012-NMCA-092, ¶ 5, 287 P.3d 344. "Our appellate courts will not invade the jury's province as fact-finder by second-guessing the jury's decision concerning the credibility of witnesses, reweighing the evidence, or substituting its judgment for that of the jury." *State v. Gwynne*, 2018-NMCA-033, ¶ 49, 417 P.3d 1157 (internal quotation marks and citation omitted). The ultimate question is "whether a rational jury could have found beyond a reasonable doubt the essential facts required for a conviction." *State v. Granillo*, 2016-NMCA-094, ¶ 10, 384 P.3d 1121 (internal quotation marks and citation omitted). "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883.

{8}     In this case, in order to convict Defendant of the assault charge, the jury was required to find beyond a reasonable doubt that:

1.     [D]efendant shot Officer . . . Caron with a firearm;

2.     At the time, Officer . . . Caron was a peace officer and was performing duties of a peace officer;

3.     [D]efendant knew Officer . . . Caron was a peace officer;

4.     [D]efendant's conduct caused Officer . . . Caron to believe [D]efendant was about to intrude on Officer . . . Caron's bodily integrity or personal safety by touching or applying force to Officer . . . Caron in a rude, insolent or angry manner;

5.     A reasonable person in the same circumstances as Officer . . . Caron would have had the same belief;

6.  [D]efendant intended to kill Officer . . . Caron[.]

At trial, Officer Caron testified that prior to the shooting, it was "very dark" and "very difficult" for him to see because he did not have a flashlight and there was no outdoor lighting nearby. Once shot, Officer Caron testified he could not see Defendant, did not know where Defendant was, and figured Defendant "was going to try and kill him." Officer Caron also testified that he did not specifically know where Defendant "took off running" after firing his gun.

**{9}** Defendant was charged with assault with intent to commit a violent felony against a peace officer which prohibits "assaulting a police officer . . . with intent to kill the peace officer." Section 30-22-23. More generally, "[a]ssault consists of either: [(1)] an attempt to commit a battery upon the person of another; [or (2)] any unlawful act, threat or menacing conduct which causes another person to reasonably believe that he [or she] is in danger of receiving an immediate battery." NMSA 1978, § 30-3-1 (1963). The testimony presented at trial fails to prove that Officer Caron *reasonably* feared an *immediate* battery after the shot. Defendant fled after shooting at Officer Caron, and Officer Caron testified that he thought that Defendant might come back and shoot him again. Were we to hold that such facts could allow a jury to infer that Officer Caron reasonably feared an immediate battery, any scenario wherein a battery with a deadly weapon occurs would necessarily transform into a subsequent assault, so long as the victim testifies that he was afraid the shooter would return and attack again. Without further evidence proving Defendant's menacing conduct or an explicit or implied threat of further violence, we cannot conclude that the jury was able to find beyond a reasonable doubt that the required elements of assault with intent to commit a violent felony against a peace officer were satisfied.

**{10}** The State additionally argues that because there was sufficient evidence to support the jury's conviction for battery—here, Defendant's shooting of Officer Caron—the "unlawful conduct" element of assault is satisfied, and such, on its own, is enough to satisfy the elements of the charged crime. The State reasons that because a conviction for assault can be supported by sufficient evidence of unlawful conduct *without* further evidence of threatening or menacing conduct, a conviction for assault with intent to commit a violent felony against a peace officer can likewise be supported merely by sufficient evidence of unlawful conduct.

**{11}** For this proposition, the State relies on *State v. Branch*, a case in which we held there to be sufficient evidence to uphold the defendant's conviction of aggravated assault with a deadly weapon based on the defendant's shooting of a victim, which caused a bystander to be assaulted in that she, too, feared that she would be shot by the defendant. 2018-NMCA-031, ¶¶ 1, 20-21, 417 P.3d 1141. There, we rejected the defendant's argument that because he had not made any threat or exhibited any menacing conduct toward the bystander there was insufficient evidence to support his conviction for aggravated assault. *Id.* ¶ 21. Instead, we held that because the defendant committed an unlawful act by shooting the victim, and because "[t]he commission of an unlawful act is an alternative method of committing [assault] that does not rely on

threatening or menacing conduct[,]" there was sufficient evidence to uphold the defendant's conviction of aggravated assault with a deadly weapon. *Id.* (internal quotation marks omitted).

**{12}**    We view *Branch* as distinct from the present case. *Branch* involved an alleged assault on a bystander who personally viewed the shooting. *Id.* ¶¶ 16, 21. Thus, the necessary inquiry in *Branch* was whether there was sufficient evidence to prove that a bystander was assaulted by witnessing the defendant shoot the victim. *Id.* ¶¶ 20-21. Here, by contrast, the State needed to present sufficient evidence to prove that Officer Caron, the victim who suffered a battery when shot, was assaulted after having been shot by Defendant. We reiterate that in *Branch*, the bystander—a separate person— was standing next to the victim when the victim was shot, had her hand on the victim's shoulder, saw the muzzle flash, "felt something hit her leg," and testified that she "thought [the defendant] was going to shoot all of us." *Id.* ¶¶ 9, 20. As well, after the defendant shot the victim, the defendant lingered at the scene. *Id.* ¶ 10. Conversely here, Officer Caron testified that while he did see a bright flash and felt a burning sensation in his leg, he did not know where Defendant was after being shot, stating that Defendant "took off running" after firing the gun at Officer Caron. We consider these factual distinctions to be significant because while the bystander in *Branch* witnessed the defendant both before and after the victim was shot—including the time in which the victim lingered at the scene of the shooting—here, Officer Caron's testimony itself makes clear his belief that Defendant ran from the scene afterward and that even before being shot by Defendant, Officer Caron was not able to clearly see Defendant or Defendant's weapon. Unlike in *Branch*, here the State did not introduce evidence sufficient to allow the jury to conclude that Officer Caron reasonably believed that Defendant would immediately batter him.

**{13}**    It remains the case that our legal standard for determining whether there was sufficient evidence presented to uphold a jury's conviction of a particular defendant gives significant deference to the jury's determinations as fact-finder. *See Gwynne*, 2018-NMCA-033, ¶ 49. However, "[w]hile we cannot substitute our own judgment for that of the jury in weighing the evidence, our own responsibility as a court requires scrutiny of the evidence and supervision of the jury's fact-finding function to ensure that, indeed, a rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction." *State v. Vigil*, 2010-NMSC-003, ¶ 4, 147 N.M. 537, 226 P.3d 636 (internal quotation marks and citation omitted). In doing so, we have a duty to "assure that the basis of a conviction is not mere speculation." *Id.* ¶ 19 (internal quotation marks and citation omitted); *see* UJI 14-6006 NMRA (providing that a jury's "verdict should not be based on speculation, guess or conjecture"). Here, we conclude that the evidence presented merely allowed the jury to speculate—rather than infer— that Defendant separately acted in a manner that caused Officer Caron reasonable fear of an immediate battery after he was shot at by Defendant. Accordingly, we reverse Defendant's conviction for assault with intent to commit a violent felony upon a peace officer. Given our holding, we need not address Defendant's double jeopardy argument.

**CONCLUSION**

**{14}** For the reasons set forth above, we vacate Defendant's conviction for assault with intent to commit a violent felony upon a peace officer and affirm Defendant's conviction of aggravated battery upon a peace officer with a deadly weapon.

**{15}** **IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**ZACHARY A. IVES, Judge**